UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHNSON KHATH, on behalf of himself and all other persons similarly situated, <br>    Plaintiff, <br><br>       v. <br><br>MIDLAND FUNDING, LLC, <br>    Defendant. | ) ) ) ) ) ) ) ) ) ) | C.A. No. 14-14184-MLW |
| VIRGINIA NEWTON, on behalf of herself and all other persons similarly situated, <br>    Plaintiff, <br><br>       v. <br><br>MIDLAND FUNDING, LLC, <br>    Defendant. | ) ) ) ) ) ) ) ) ) ) | C.A. No. 16-10727-MLW |

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 26, 2018

I.   SUMMARY

Plaintiffs Johnson Khath and Virginia Newton in these consolidated cases are Massachusetts residents with credit card debt who each initiated a putative class action suit against defendant Midland Funding, LLC ("Midland"), a debt collection company. Plaintiffs claim that Midland has harmed Massachusetts residents by wrongfully operating in the state without a debt

collector license.[1] Khath and Newton filed their cases against Midland in the Massachusetts Superior Court. Midland removed the cases to federal court, where they were consolidated. The cases were referred to the Magistrate Judge for pretrial proceedings.

Midland has twice moved to compel arbitration and stay the instant proceedings or, in the alternative, to dismiss plaintiffs' claims. On January 20, 2017, the Magistrate Judge issued an Order denying without prejudice Midland's first Motion to Compel Arbitration, finding that evidence then in the record did not demonstrate an unbroken chain of assignment to Midland of the plaintiffs' credit card accounts. See Docket No. 82 at 11-12 (the "January 20, 2017 Order"). The Magistrate Judge also found a triable issue existed concerning whether the credit card agreement produced by Midland, which contains an arbitration clause, governs Newton's account. Id. at 12 n.9.

On August 14, 2017, the Magistrate Judge granted in part and denied in part Midland's Renewed Motion to Compel Arbitration. Docket No. 116 (the "August 14, 2017 Order"). The Magistrate Judge

---

[1] The court has received Midland's Notice of Supplemental Authority, asserting that the Supreme Judicial Court's recent decision in Dorrian v. LVNV Funding, LLC, 94 N.E.3d 370, 372 (Mass. 2018), which held that "passive debt buyer[s]" are not "debt collectors" subject to the Massachusetts licensing framework, will foreclose the plaintiffs' substantive claims. However, this issue is not now before the court.

ordered Khath to arbitrate, finding that Midland had presented sufficient evidence to prove that Khath's credit account was assigned to it, and that an agreement to arbitrate exists between Khath and Midland. Id. at 6, 9. The Magistrate Judge also held that the validity of the Class Action Waiver provision found in Khath's credit card agreement was an issue that the agreement reserved for the court, as Midland conceded at oral argument. Id. at 9. However, she decided to stay litigation concerning the validity of the Class Action Waiver provision until after arbitration of Khath's individual claim. Id. The Magistrate Judge denied the Renewed Motion to Compel with respect to Newton, reaffirming her earlier ruling that a triable issue remains concerning whether an agreement to arbitrate exists between Newton and Midland. Id. at 7-8, 10.

Now pending before the court are the plaintiffs' objections to the Magistrate Judge's January 20, 2017 Order, see Docket No. 83, and both parties' objections to the Magistrate Judge's August 14, 2017 Order, see Docket Nos. 117 & 118. For the reasons set forth below, the court is affirming the Magistrate Judge's January 20, 2017 Order. The court is modifying in part the August 14, 2017 Order because the Magistrate Judge must decide whether the Class Action Waiver in Khath's credit card agreement is valid before ordering Khath to arbitrate because the Class Action Waiver

3

provides that if it is found to be invalid the agreement to arbitrate is void.

II.  FACTUAL BACKGROUND

The following undisputed facts are taken from the Magistrate Judge's January and August 2017 Orders, and the record as cited in those Orders.

Khath opened a credit card account with FIA Card Services, N.A. ("FIA") on or about October 11, 2007 (the "Khath Account"). See Docket No. 46-1 ("Burger-Khath Decl.") ¶11. The Khath Account number originally ended in 5191, but was changed to end in 2958 after it was closed. See id. Khath incurred charges on his account after opening it. See id., Ex. 1 (billing records for Khath Account dated between September 2008 and May 2009). The Khath Account was closed on April 30, 2009 with an outstanding balance of $1,028.56. See Burger-Khath Decl. ¶14. Midland then allegedly purchased the rights to the Khath Account and sought to collect the debt by suing Khath in state court, which entered judgment in Khath's favor. Midland has submitted a credit card agreement that it argues governs the Khath Account and requires Khath to arbitrate his claims against Midland. See id., Ex. 2 (the "FIA Agreement").[2]

---

[2] FIA's successor-in-interest is Bank of America, N.A., a wholly-owned subsidiary of Bank of America Corporation. See Docket No. 61 ("Stephenson Aff.") ¶2. Therefore, some of the evidence pertaining to the Khath Account carries the Bank of America name rather than

Newton opened a credit card account with Chase Bank USA, N.A. ("Chase") on or about September 9, 2001 (the "Newton Account"). See Docket No. 46-2 ("Burger-Newton Decl.") ¶11. The Newton Account number ends in 0189. See id. Newton incurred charges on her account after opening it. See id., Ex. 1 (billing records for Newton Account dated between August 2007 and December 2008). On February 27, 2009, the Newton Account was closed with an outstanding balance of $21,798.45. See Burger-Newton Decl. ¶14. Midland allegedly purchased the rights to the Newton Account from Chase and sought to collect the debt by suing Newton in state court, where Midland obtained a default judgment against her. Midland has submitted a credit card agreement that it contends governs the Newton Account and requires Newton to arbitrate her claims against Midland as well. See id., Ex. 2 (the "Chase Agreement").

III. DISCUSSION

A. Standard of Review

When a party timely objects to a non-dispositive ruling of a magistrate judge on a pretrial matter, the district judge must modify or set aside any part of the order that is "clearly erroneous or contrary to law." 28 U.S.C. 636(b)(1)(A); Fed. R.

---

the FIA name. See, e.g., Docket No. 46-1, Ex. 1 (Khath Account billing records). Khath does not challenge the relationship between FIA and any Bank of America entities.

Civ. P. 72(a). An order compelling arbitration is a non-dispositive ruling. See PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 14-15 (1st Cir. 2010). In both of her Orders, the Magistrate Judge characterized the motions to compel arbitration as non-dispositive and held, therefore, that she could decide the motions subject to appeal. See Jan. 20, 2017 Order at 2 n.2; Aug. 14, 2017 Order at 2 n.2. No party objected to this conclusion, which is in any event correct. Therefore, the Magistrate Judge's rulings are reviewed under the foregoing standard.

The "clearly erroneous" standard requires that the district judge accept the magistrate judge's findings of fact and the conclusions drawn from them "unless, after scrutinizing the entire record, [the court] form[s] a strong, unyielding belief that a mistake has been made." Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999) (quotations omitted); see Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1990). The district judge reviews pure questions of law de novo. See PowerShare, 597 F.3d at 15. Mixed questions of law and fact are subject to a sliding scale of review. See In re IDC Clambakes, Inc., 727 F.3d 58, 64 (1st Cir. 2013). "The more fact intensive the question, the more deferential the level of review (though never more deferential than the clear error standard); the more law intensive the question, the less deferential the level of review." Id. (quotations omitted).

6

B. The Magistrate Judge's Findings That Both Accounts Were Assigned to Midland Are Not Clearly Erroneous

In her January 20, 2017 Order, the Magistrate Judge found that Midland failed to prove the threshold facts that it had been assigned both the Khath and Newton Accounts, which would allow Midland to enforce the agreements governing those accounts. See Jan. 2017 Order at 11. The Magistrate Judge, therefore, denied Midland's first Motion to Compel Arbitration without prejudice, inviting the submission of additional evidence.[3] Subsequently, in her August 14, 2017 Order, the Magistrate Judge found that Midland had submitted sufficient evidence in support of its Renewed Motion to prove that both the Khath and Newton Accounts were assigned to Midland. See Aug. 14, 2017 Order at 5. The parties made numerous objections to the Magistrate Judge's rulings. As explained earlier, the Magistrate Judge's factual findings are reviewed for clear error, see Phinney, 199 F.3d at 4, while legal issues are reviewed de novo, see PowerShare, 597 F.3d at 15.

---

[3] Plaintiffs objected to the January 20, 2017 Order on the ground that the Magistrate Judge should have denied Midland's motion "as a matter of law" – presumably meaning with prejudice - because it found insufficient evidence of assignments of the accounts at issue. See Docket No. 83 at 10. Plaintiffs did not elaborate or provide legal argument on this issue. The court need not address this perfunctory objection. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

First, as a threshold matter, plaintiffs argue that the Magistrate Judge erred by not deciding in her January 2017 Order whether Midland is precluded from relitigating the issue of ownership of the Khath Account by a judgment Khath obtained from the Malden District Court on September 3, 2014. See Docket No. 83 at 9-10.[4] Plaintiffs' objection has two dimensions: that the Magistrate Judge should have addressed the issue, and that the Magistrate Judge should have ruled in Khath's favor. However, the Magistrate Judge did not act "contrary to law" in declining to rule on the issue preclusion argument at the time because she had discretion to deny the motion to compel without prejudice. See Oliveira v. New Prime, Inc., 857 F.3d 7, 12, 24 (1st Cir. 2017); 28 U.S.C. 636(b)(1)(A).

In any event, this court cannot now find on the present record that issue preclusion applies and, therefore, that Khath was entitled to a ruling in his favor. The burden of proving issue preclusion "is always on the person raising the bar." Fireside Motors, Inc. v. Nissan Motor Corp., 479 N.E.2d 1386, 1390 (Mass. 1985). Under Massachusetts law, issue preclusion applies when:

---

[4] Khath did not renew his argument for issue preclusion in his opposition to Midland's Renewed Motion to Compel. See Docket Nos. 103 & 113. Nor did he object to the Magistrate Judge's August 2017 Order on the grounds that she should have considered issue preclusion. See Docket No. 118.

(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party … to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment.

In re Sonus Networks, Inc., 499 F.3d 47, 57 (1st Cir. 2007) (quoting Kobrin v. Bd. of Reg. in Med., 832 N.E.2d 628, 634 (Mass. 2005)). "Massachusetts courts also require that appellate review must have been available in the earlier case before issue preclusion will arise." Id.

Here, the court cannot now discern which issues were "actually adjudicated" by the Malden District Court judgment, as would be required to determine that Midland is seeking to relitigate the same issue that was previously decided. Id. at 62. The Malden District Court judgment is a single-page form and does not explain the court's reasons for entering judgment for Khath. On the present record, this court cannot find that the Malden District Court decided that Midland did not own the Khath account, which is the issue Khath seeks to preclude litigation of now. Although Khath's attorney's affidavit asserts that the ownership issue was his sole defense at the Malden District Court trial, Khath's answer filed in that case contains numerous defenses. Therefore, it is not clear to this court on what grounds Khath previously prevailed.

Moreover, factors tending to support the conclusion that a decision is "final" are lacking. See Tausevich v. Bd. of App. of

Stoughton, 521 N.E.2d 385, 387 (Mass. 1988) (citing Restatement (Second) of Judgments §13, cmt. g (1982)); see also Jarosz v. Palmer, 766 N.E.2d 482, 489-90 (Mass. 2002). The Malden District Court judgment is not "supported by reasoned opinion" explaining why judgment entered for Khath; it states the judgment is not appealable, so it was not "subject to review"; and the court cannot discern that the parties "were fully heard" on the ownership issue. Jarosz, 766 N.E.2d at 489-90. Therefore, Khath has not now proven issue preclusion applies here. Khath may, however, request that the Magistrate Judge reconsider, or expressly address, the question of issue preclusion on a fuller evidentiary record, and the Magistrate Judge will have the discretion to decide whether to do so. See Fed. R. Civ. P. 54(b).

In addition, plaintiffs object to both of the Magistrate Judge's Orders on the grounds that she should not have considered Midland's evidence submitted in support of its ownership claim because it lacked proper foundation and/or was not newly discovered; and therefore, she should have found that Midland was not assigned either account. See Docket No. 83 at 4-5; Docket No. 118 at 3-7. The Magistrate Judge's factual findings with respect to the Khath and Newton Accounts are discussed below. The court must accept the Magistrate Judge's factual findings "unless, after scrutinizing the entire record, [the court] form[s] a strong,

unyielding belief that a mistake has been made." Phinney, 199 F.3d at 4 (quotations omitted).

Midland initially submitted the following evidence to demonstrate it was assigned the Khath Account. According to the declaration of Michael Burger, the Director of Operations for Midland Credit Management, Inc., which maintains the business records of Midland, Khath owed $1,028.56 on his FIA account when it was closed on April 30, 2009. See Burger-Khath Decl. ¶¶1-2, 14. A bill of sale dated May 18, 2009, states that FIA transferred ownership of a portfolio of unidentified accounts to Asset Acceptance LLC ("Asset") on that day. See id., Ex. 3 ("FIA Bill of Sale"). According to the affidavit of Tracy Hopkins, a Bank Officer at FIA, the Khath Account was in the portfolio of accounts FIA sold to Asset on May 14, 2009. See id., Ex. 4 ("Hopkins Aff.").

A second bill of sale, dated November 21, 2013, then transferred ownership of a portfolio of unidentified accounts from Asset to Midland. See id., Ex. 5 ("Asset Bill of Sale"). Amber Bialkowski, a Portfolio Acquisitions Record Support representative at Asset, stated in her affidavit that on November 21, 2013, Asset sold to Midland the same "pool of charged-off accounts" that it had previously purchased from FIA on May 18, 2009. Burger-Khath Decl., Ex. 6 ("Bialkowski Aff."). Midland also produced a printout of electronic data concerning the Khath Account that it represents it received from Asset in the November 21, 2013 sale, but the data

11

itself does not contain any reference to the sale. See Burger-Khath Decl., Ex. 7 (electronic data).

The Magistrate Judge found in her January 20, 2017 Order that this evidence was insufficient to prove that the Khath Account was in the portfolio of accounts that Asset sold to Midland in November 2013 because neither the Asset Bill of Sale nor the Bialkowski Affidavit identified Khath's Account, by name or number, as part of the portfolio sold to Midland. See Jan. 2017 Order at 5, 11-12. Therefore, the Magistrate Judge could not conclude the Khath Account in particular had been sold to Midland. To address this deficiency in the evidence, Midland submitted additional raw data that it claims it received from Asset in the November 2013 sale. See Docket No. 95-1 ("Suppl. Burger-Khath Decl."), Ex. 1 (electronic data). The data, excerpted from a larger excel spreadsheet, identifies the Khath Account by name and number. It also shows that Asset purchased the Khath Account from Bank of America on May 18, 2009, and then sold the account to Midland on November 21, 2013. In addition, Midland submitted a declaration of Elizabeth MacLean, an authorized representative and records custodian for Asset, stating that Asset received this raw data concerning the Khath Account from FIA before transferring it to Midland. See Docket No. 97 ("MacLean Decl.") ¶¶1-2, 5. After considering the additional evidence, the Magistrate Judge found

that Midland had been sold the Khath Account. See Aug. 14, 2017 Order at 5-6.

Similarly, to demonstrate ownership of the Newton Account, Midland initially submitted the following evidence. A bill of sale dated October 20, 2010, shows that Chase transferred ownership of a portfolio of unidentified accounts to Midland on that date. See Burger-Newton Decl., Ex. 3 ("Chase Bill of Sale"). Midland produced a printout of electronic data concerning the Newton Account that it allegedly received from Chase in the October 20, 2010 sale, but the data itself does not indicate whether the Newton Account was part of the portfolio Midland purchased from Chase. See id., Ex. 7 (electronic data). Christine Sallie, an Officer of JPMorgan Chase Bank, N.A., stated in her affidavit that Chase "sold a pool of charged-off accounts" to Midland and provided electronic records to Midland as part of the sale, but again, she does not reference the Newton Account specifically. See id., Ex. 4 ("Sallie Aff.").

As with Khath, the Magistrate Judge found this initial evidence insufficient to prove that the Newton Account was in the pool of accounts that Chase sold to Midland in October 2010 because neither the Chase Bill of Sale nor the Sallie Affidavit identified Newton's Account, by name or by number, as part of that portfolio. See Jan. 20, 2017 Order at 7, 11-12. To address this deficiency, Midland submitted additional raw data that Midland claims it received from Chase in the October 20, 2010 sale. See Docket No.

96 ("Suppl. Burger-Newton Decl."), Ex. 1 (electronic data). The data is similar to supplemental data Midland provided for the Khath Account. It identifies the Newton Account by name and number and indicates that Chase sold the Newton Account on October 20, 2010. Burger stated in a supplemental declaration that Midland received this excel data from Chase in the October 20, 2010 sale. See Suppl. Burger-Newton Decl. ¶¶11-12. Based on this additional evidence showing that the Newton Account was in the portfolio Chase sold to Midland on October 20, 2010, the Magistrate Judge decided that Midland was assigned the Newton Account as well. See Aug. 14, 2017 Order at 5-6.

Considering the evidence in the record as a whole, this court has not formed "a strong, unyielding belief that a mistake has been made" with regard to Midland's ownership of the Newton and Khath Accounts. Phinney, 199 F.3d at 4. Midland produced bills of sale and affidavits demonstrating how it obtained ownership of the Khath and Newton Accounts, as well as the underlying raw data that corroborates and provides more detail about the purchases. Therefore, the Magistrate Judge's findings that Midland was assigned the Khath and Newton Accounts are not clearly erroneous.

As indicated earlier, plaintiffs also object to the Magistrate Judge's findings on evidentiary grounds. These objections are unmeritorious. Plaintiffs argue that the business records Midland submitted are inadmissible hearsay because the

declarants cannot lay the proper foundation for the records to be admitted, since they did not participate in creating the records. See Docket No. 118 at 4-7; see also Docket No. 83 at 5-9. However, Midland and Asset are entitled to rely on the original creditors' business records because they each integrated them into their own businesses. See United States v. Doe, 960 F.2d 221, 222-23 (1st Cir. 1992) (shop owner could rely on and testify about another business's records because the shop owner integrated them into the records of his business); Hays v. Jefferson Capital Sys., LLC, 2017 WL 449590, at *1-2 (D. Mass. 2017) (O'Toole, J.) (holding assignee debt collector was entitled to rely on the original account servicer's records); Schwartz v. CACH, LLC, 2014 WL 298107, at *1-2 & n.2 (D. Mass. 2014) (Saylor, J.) (holding that the custodian of records for debt collector was competent to testify about FIA's record-keeping, based on his own personal custodial responsibilities).

Here, Burger provided declarations on behalf of Midland concerning the Khath and Newton Account records. Burger stated that he is an "authorized custodian of records" for Midland, and that Midland "integrate[s]" and "relie[s] upon" business records created by original creditors when it purchases debtor accounts. Suppl. Burger-Khath Decl. ¶¶1-2, 7-8; Suppl. Burger-Newton Decl. ¶¶1-2, 7-8; see also MacLean Decl. ¶¶1-3 (same, but for Asset). Even though Burger did not prepare the FIA or Chase records, or

the data concerning the plaintiffs' accounts, "[i]t is not required that the qualified witness . . . be the person who actually prepared the record." United States v. Moore, 923 F.2d 910, 915 (1st Cir. 1991) (quotations omitted). Therefore, Midland and Assert were entitled to rely on the original creditors' business records, and Midland may introduce those records through custodians Burger and MacLean. In view of this evidence, the Magistrate Judge's findings that Midland was assigned both the Khath and Newton Accounts are being affirmed.

In addition, plaintiffs object to the August 2017 Order on the grounds that the Magistrate Judge should have decided the Renewed Motion as a motion for reconsideration, and refused to consider any evidence that was not "newly discovered." Docket No. 118 at 3-4. This objection is also without merit. The Magistrate Judge denied Midland's first Motion to Compel Arbitration without prejudice, providing Midland the opportunity to present more evidence concerning the assignments issue. See Jan. 20, 2017 Order at 13. Moreover, "[n]o authority - not the [Federal Arbitration Act or 'FAA'], the Federal Rules of Civil Procedure, or any other source of law of which we are aware - limits a party to only one motion under §§3 or 4 of the FAA." Dillon v. BMO Harris Bank, N.A., 787 F.3d 707, 715 (4th Cir. 2015) (holding the district court erred by deciding a renewed motion to compel as a motion for reconsideration). The FAA creates only one circumstance, not

present here, where a party may lose its right to compel arbitration: when the party is "in default in proceeding with such arbitration." Id. (quoting 9 U.S.C. §3). Therefore, the Magistrate Judge correctly decided Midland's Renewed Motion as a second motion to compel arbitration rather than a motion for reconsideration of her previous ruling.

C. The Magistrate Judge Properly Decided the Gateway Issue of Whether an Agreement to Arbitrate Exists for Each Plaintiff

In her August 14, 2017 Order, the Magistrate Judge ordered that Khath's claims be arbitrated, but did not order Newton to arbitrate. See Aug. 14, 2017 Order at 2. Midland asserts that the Magistrate Judge did not have the authority to decide the validity of the credit card agreements; rather, the issue of whether the parties agreed to arbitrate should have been referred to the arbitrator. This objection presents a legal issue that the court reviews de novo. See PowerShare, 597 F.3d at 15.

Midland's objection is based on a misunderstanding or mischaracterization of the Magistrate Judge's decision. Midland fails to recognize that "[t]he issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 444, 444 n.1 (2006). The Magistrate Judge's decision addressed whether an agreement was "concluded"

between Midland and each plaintiff, not whether the credit card agreements were "valid[]." Id.

The FAA states that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. §4. Moreover, "[a]rbitration is strictly a matter of consent." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010) (quotations omitted). Therefore, "courts should order arbitration of a dispute only where the court is satisfied that [] the formation of the parties' arbitration agreement . . . is [not] in issue." Id. Put another way, "[i]t is [] well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Id. at 296 (quotations omitted); see also Hoefs v. CACV of Colo., LLC, 365 F. Supp. 2d 69, 72 (D. Mass. 2005) (Ponsor, J.) (holding that under the FAA, the court can only compel arbitration "[o]nce it is satisfied that the parties agreed to arbitrate"). Therefore, it was correct for the Magistrate Judge "to address the predecessor question of whether there was an agreement at all to arbitrate," since the plaintiffs dispute that they are bound by the agreements at issue. Awuah v. Coverall N. Am., Inc. ("Awuah II"), 703 F.3d 36, 38, 42 (1st Cir. 2012) (quotations omitted).

The Supreme Court has held that there are two types of gateway arbitrability disputes that the court must resolve before ordering arbitration:

> (1) disputes "about whether the parties are bound by a given arbitration clause"; and (2) disagreements "about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." . . . Examples of the former include <u>whether an arbitration contract binds parties that did not sign the agreement</u>; and whether an arbitration agreement survived a corporate merger and bound the subsequent corporation.

Kristian v. Comcast Corp., 446 F.3d 25, 39 (1st Cir. 2006) (emphasis added) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). This case falls into the first category of gateway disputes reserved for the court because the plaintiffs dispute that the agreements submitted by Midland govern their respective accounts; there is, therefore, an issue of "whether the arbitration contract [binds] parties who did not sign the agreement." Howsam, 537 U.S. at 83-84 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943-46 (1995)). Thus, as the Magistrate Judge explained, the court must first "satisfy itself that an arbitration agreement actually exists" before ordering arbitration. Aug. 14, 2017 Order at 4-5 & n.7 (citing Awuah II, 703 F.3d at 41). Accordingly, the Magistrate Judge then decided whether an agreement exists between Midland and each plaintiff - more specifically, whether Khath and Newton are bound by the credit card agreements submitted by Midland. See Aug. 14, 2017 Order at

8-9. This approach was consistent with Supreme Court and First Circuit precedent requiring the court to decide this "narrow" gateway arbitrability issue before ordering arbitration. See Howsam, 537 U.S. at 83; Awuah II, 703 F.3d at 42.

Distinct from the issue of whether an agreement was concluded is the question of whether a concluded agreement is valid and enforceable. See Buckeye Check Cashing, 546 U.S. at 444 n.1. Such "[c]hallenges to the validity of arbitration agreements" can be further divided into "two types." Id. at 444. "One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole . . . ." Id. Any "challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Id. at 449; see Awuah v. Coverall N. Am., Inc. ("Awuah I"), 554 F.3d 7, 10-11 (1st Cir. 2009) ("[A] challenge to the validity of the contract itself is subject to arbitration and that allocation of authority to the arbitrator will [] be respected by the court."). Therefore, the arbitrator decides whether the contract as a whole is valid or, instead, invalid because of defenses such as fraud or unconscionability. See, e.g., Buckeye Check Cashing, 546 U.S. at 445-46 (holding that arbitrator should decide whether the finance charge in contract was usurious because the argument went to the validity of the contract as a whole, rather than the arbitration clause specifically); Prima Paint Corp. v. Flood & Conklin Mfg.

20

Co., 388 U.S. 395, 403-04 (1967) (holding that the court may not "consider claims of fraud in the inducement of the contract generally").

If, however, "a party challenges the validity . . . of the precise agreement to arbitrate," meaning the arbitration clause specifically rather than the contract generally, "the federal court must consider the challenge before ordering compliance with that agreement." Rent-A-Ctr., West, Inc. v. Jackson, 561 U.S. 63, 71 (2010). However, an arbitration clause may contain a delegation provision that gives the arbitrator, rather than the court, the "exclusive authority to resolve any dispute relating to the enforceability of [the] Agreement." Id. at 71-72. If the agreement "clearly and unmistakably" delegates to the arbitrator questions of validity of the arbitration agreement, Awuah II, 703 F.2d at 41, the court must enforce the delegation provision and order arbitration of the issue of whether the arbitration clause is valid - unless the delegation clause itself is specifically challenged. See Awuah I, 554 F.3d at 9, 12-13 (holding that the arbitrator should decide whether the arbitration clause was unconscionable where plaintiffs conceded that they were bound by franchise agreements containing arbitration clauses with delegation provisions).

In this case, the arbitration provisions in the FIA and Chase Agreements contain clauses that delegate to the arbitrator

questions about the applicability of the arbitration provisions. The FIA Agreement states in relevant part: "The arbitrator shall resolve any Claims, including the applicability of this Arbitration and Litigation Section or the validity of the entire Agreement . . . , except for any Claim challenging the validity of the Class Action Waiver, which shall be decided by a court." FIA Agreement at 39. The Chase Agreement similarly states: "Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement . . . ." Chase Agreement at 3. Midland argues the court should have enforced the delegation clauses and ordered both parties to arbitrate the validity of the arbitration agreements. See Docket No. 117 at 4-8. However, the court cannot enforce any provision in the FIA and Chase Agreements until it decides the "predecessor question of whether there was an agreement at all" between the parties. Awuah II, 703 F.3d at 42 (quotations omitted); see also Howsam, 537 U.S. at 84. Therefore, the Magistrate Judge was correct in analyzing the factual question of whether an agreement existed between Midland and each plaintiff before ordering either plaintiff to arbitration. Contrary to Midland's assertions, the Magistrate Judge did not rule on the validity of the contracts generally or of the arbitration clauses specifically.

1. <u>There Is No Triable Issue Concerning the Existence of an Agreement Between Khath and Midland</u>

For the reasons explained earlier, the Magistrate Judge must determine whether an agreement exists between Midland and each plaintiff before ordering arbitration. In her January 20, 2017 Order, the Magistrate Judge initially declined to decide whether an agreement existed between Midland and either plaintiff because Midland had not yet demonstrated that it had obtained the rights to either account. See Jan. 20, 2017 Order at 12 & n.9. Plaintiffs object to this aspect of the January 20, 2017 Order on several grounds, which are not meritorious.

Two of the plaintiffs' objections are related. Plaintiffs argue that the Magistrate should have decided the issue of whether an agreement exists between Midland and each plaintiff in January 2017, and that she should have found no agreements existed because Midland's evidence at the time was insufficient. See Docket No. 83 at 4-5, 7-10. However, the Magistrate Judge had the discretion to deny the Motion to Compel Arbitration without prejudice to allow the development of a fuller factual record. See <u>Oliveira</u>, 857 F.3d at 24 (affirming an order denying without prejudice defendant's motion to compel arbitration to permit the parties to conduct discovery on an arbitrability issue); <u>Dillon</u>, 787 F.3d at 715 (holding that parties are allowed multiple motions to compel arbitration).

Plaintiffs also object to the January 20, 2017 Order on the ground that the Magistrate Judge improperly imposed a burden on plaintiffs to prove they did not agree to arbitrate. See Docket No. 83 at 3-4, 6-7. However, the Magistrate's Order did not decide whether an agreement exists between Midland and Khath. Therefore, any purported error regarding the burden of proof was not material.

Subsequently, in her August 14, 2017 Order, the Magistrate Judge implicitly found that an arbitration agreement existed between Midland and Khath, and ordered Khath to arbitration. See Aug. 14, 2017 Order at 6, 9. Plaintiffs object to this ruling on several grounds, only one of which is meritorious.

Plaintiffs argue that the Magistrate Judge should have decided Midland's motions to compel arbitration under a summary judgment standard. See Docket No. 118 at 7-9 & nn.8-9; see also Docket No. 83 at 3-4. However, the Magistrate Judge used the correct standard for compelling arbitration. See Aug. 14, 2017 Order at 3-4 & nn.3-4. As explained by the Magistrate Judge, First Circuit precedent holds that to compel arbitration, Midland "must demonstrate that a valid agreement to arbitrate exists, that [it is] entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 6 (1st Cir. 2014). Although the Magistrate Judge stated that the summary judgment standard was inapplicable, she

effectively decided Midland's motions under the summary judgment standard by weighing all of the record evidence to determine the existence of a triable issue of fact with respect to each plaintiff. See Aug. 14, 2017 Order at 3 & n.4 (citing Hoefs, 365 F. Supp. 2d at 72). Moreover, the court need not decide whether the summary judgment standard differs from the Hoefs standard utilized by the Magistrate Judge because she properly found that the result would be the same under either standard. See id. Therefore, the Magistrate Judge's ruling was not contrary to law.

Plaintiffs also object to the August 14, 2017 Order on the ground that the Magistrate Judge should not have ordered Khath to arbitrate because she never found an agreement to arbitrate exists between the parties. See Docket No. 118 at 7-8. This objection is based on a misunderstanding of the August 14, 2017 Order. The Order contains an implicit finding that once Midland demonstrated it was assigned the Khath Account, there were no disputed material facts; therefore, Midland had proven the existence of an agreement between Midland and Khath, which provided for arbitration. See Aug. 14, 2017 Order at 6, 9. Nevertheless, the court reviews the Magistrate Judge's finding for clear error.

After reviewing the record, the court does not find that "a mistake has been made." Phinney, 199 F.3d at 4. Undisputed evidence submitted by Midland adequately supports a finding that Khath made an agreement to arbitrate with FIA. The first page of the FIA

Agreement, which Midland alleges governs the Khath Account, has the plaintiff's name, Johnson Khath, on it. See FIA Agreement at 1. The FIA Agreement states that "[t]he terms of this Agreement apply to you if . . . you . . . used the account . . . and/or otherwise accepted the account." Id. at 17. Billing records submitted by Midland show that Khath indeed incurred charges on the account. See Burger-Khath Decl., Ex. 1 (billing records).

The FIA Agreement also contains an "Arbitration and Litigation" section, which states in relevant part:

> Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort or otherwise and whether for money damages, penalties or declaratory or equitable relief), shall, upon election by either you or us, be resolved by binding arbitration. The arbitrator shall resolve any Claims, including the applicability of this Arbitration and Litigation Section or the validity of the entire Agreement, or any prior Agreement, except for any Claim challenging the validity of the Class Action Waiver, which shall be decided by a court.

FIA Agreement at 40-41. Melinda K. Stephenson, an Officer of Bank of America, N.A., successor-in-interest to FIA, stated in an affidavit that the proffered FIA Agreement was sent to Khath. See Stephenson Aff. ¶¶1-2, 8. "[T]he proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee . . . ." Hoefs, 365 F. Supp. 2d at 72-73. In view of the foregoing, the Magistrate Judge had ample

support for her conclusion that Midland proved the existence of an agreement between FIA and Khath.

In addition, when ordering Khath to arbitration, the Magistrate Judge held that "any claim challenging the validity of the class action waiver [in the FIA Agreement] as it relates to the Khath Account should be determined by a court, rather than an arbitrator." Aug. 14, 2017 Order at 9. This part of her holding relates to the "Class Action Waiver" language in the "Arbitration and Litigation" section of the FIA Agreement. The Class Action Waiver states:

> No Claim submitted to arbitration is heard by a jury or may be brought as a class action or as a private attorney general. You do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim submitted to arbitration (Class Action Waiver). . . . If the Class Action Waiver is limited, voided or found unenforceable, then the parties' agreement to arbitrate (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or Invalidation of the Class Action Waiver. **The Parties acknowledge and agree that under no circumstances will a class action be arbitrated.**

FIA Agreement at 40-41 (emphasis in original). As explained earlier, challenges directed specifically to the validity of an arbitration agreement are to be decided by the court unless the agreement expressly delegates that decision to an arbitrator. See Rent-A-Ctr., 561 U.S. at 71-72; Awuah II, 703 F.2d at 41. The FIA Agreement does contain a delegation provision; however, it explicitly excludes challenges to the Class Action Waiver, stating

that "any Claim challenging the validity of the Class Action Waiver . . . shall be decided by a court." FIA Agreement at 39 (emphasis added). Consequently, as Midland conceded at oral argument before the Magistrate Judge, the Magistrate Judge properly held that the court has the authority and responsibility to decide the validity of the Class Action Waiver in the FIA Agreement. See Aug. 14, 2017 Order at 9.

Plaintiffs object to this holding of the Magistrate Judge, arguing that she should have "reject[ed] outright Midland's effort to enforce a purported class action waiver" against Khath because Midland did not fully brief the Class Action Waiver argument. Docket No. 118 at 10. This objection is not meritorious because Midland argued for enforcement of the Class Action Waiver in its original Motion to Compel Arbitration, see Docket No. 46 at 15-17, and incorporated this argument into its Renewed Motion, see Docket No. 94 at 2 n.1, and its reply, see Docket No. 107 at 10-12. Plaintiffs argued against enforcing the Class Action Waiver in their opposition to Midland's Renewed Motion. See Docket No. 103 at 13-14; Docket No. 113 at 4-5. In addition, the issue was addressed at oral argument. See Aug. 14, 2017 Order at 9. Therefore, the plaintiffs had an adequate opportunity to address the issue.

Plaintiffs also object to the Magistrate Judge's decision that the arbitrator should "first decide whether the arbitration

clause [in the FIA Agreement] is valid and enforceable _before_ this Court takes up any issue concerning class action waiver." Aug. 14, 2017 Order at 9 (emphases added). Plaintiffs argue that the court should instead decide whether the Class Action Waiver in the FIA Agreement is valid _before_ ordering Khath to arbitration because, pursuant to the language of the waiver, if the waiver is "limited, voided or found unenforceable," the entire agreement to arbitrate is void. FIA Agreement at 41.

The plaintiffs are correct that the court should decide the validity of the Class Action Waiver before ordering Khath to arbitrate. Although the FIA Agreement does not explicitly state the validity of the Class Action Waiver should be decided first, the Supreme Court has held that when "a party challenges the validity . . . of the precise agreement to arbitrate . . . the federal court must consider the challenge _before_ ordering compliance with that agreement." Rent-A-Ctr., 561 U.S. at 71 (emphasis added). Therefore, in Skirchak v. Dynamics Research Corp., the First Circuit affirmed the court's decision to strike a class action waiver as unconscionable before ordering arbitration, where the parties agreed the court should decide the issue. See 508 F.3d 49, 52, 55-56 (1st Cir. 2007).

Here, the Class Action Waiver appears in the Arbitration and Litigation section of the FIA Agreement. Khath argues that the waiver is unconscionable because it appears in the fine print of

the agreement and is, therefore, unenforceable. See Docket No. 103 at 13-24; Docket No. 113 at 5. For the reasons explained earlier, see supra at 24-25, validity of the Class Action Waiver is an issue for the court to decide in this case. "[T]he primary purposes of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010); Skirchak, 508 F.3d at 56 (noting the "question of whether class arbitration is forbidden" by a class action waiver is a question of "what kind of arbitration proceeding the parties agreed to"). In this case, if the Magistrate Judge finds the Class Action Waiver to be unenforceable, the agreement to arbitrate is void. Therefore, Khath's challenge to specific waiver language in the arbitration agreement must be resolved before the court can order compliance with the arbitration agreement. See Rent-A-Ctr., 561 U.S. at 71; Skirchak, 508 F.3d at 55-56. Accordingly, the Magistrate Judge's August 14, 2017 Order is being modified to require a determination of the validity of the Class Action Waiver before Khath is compelled to arbitrate.

2. There Is a Triable Issue Concerning the Existence of an Agreement Between Newton and Midland

The Magistrate Judge found in her January 20, 2017 Order that a triable issue existed concerning whether Newton entered into an agreement to arbitrate with Midland. See Jan. 20, 2017 Order at 12

n.9. As discussed earlier, the Magistrate Judge properly explained that the party seeking arbitration "must demonstrate 'that a valid agreement to arbitrate exists, that [it is] entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Id. at 8-9 (quoting Grand Wireless, Inc., 748 F.3d at 6); see also Aug. 14, 2017 Order at 3. Applying this standard, the Magistrate Judge then found that:

> Midland has not demonstrated if or when a credit card agreement was sent to Newton, or, to the extent an agreement was sent to her, that it was the Chase Card Agreement. Midland states that the Chase Card Agreement is an "exemplar" of the agreement for the Newton Account, see Second Burger Decl. ¶ 12, but offers no evidence that the Chase Card Agreement was sent to Newton or was otherwise connected to the Newton Account. Accordingly, there is no evidence that Newton received notice of the agreement that Midland now seeks to enforce.

Jan. 20, 2017 Order at 12 n.9.[5]

Subsequently, in her August 14, 2017 Order, the Magistrate Judge noted that "[t]he court previously found that . . . Midland failed to demonstrate a proper nexus between the Chase Card

---

[5] Plaintiffs argue that based on this finding in the January 20, 2017 Order, that Midland had failed to connect the Chase Agreement to the Newton Account, the Magistrate Judge "was required to deny Defendant's motion as to Newton as a matter of law." Docket No. 83 at 6, 9-10. This objection is unpersuasive because, as previously explained, the Magistrate Judge has discretion to deny motions to compel without prejudice to allow the record to develop further. See Oliveira, 857 F.3d at 24.

Agreement and the actual agreement governing the Newton Account,"
and found that Midland "still has not satisfied the factual
predicate" of linking the proffered Chase Agreement to the Newton
Account specifically. Aug. 14, 2017 Order at 7-8. The Magistrate
Judge stated that Midland "has not put forth any evidence that it
mailed the Chase Card Agreement to Newton nor does it offer any
declarations pertaining to that agreement," and the court had "no
basis . . . to conclude that the Chase Card Agreement was the only
agreement in effect during the time in which Newton used her credit
card." Id. at 7-8. Therefore, she found that "there remains a
triable issue regarding whether the Chase Card Agreement governs
the Newton Account." Id. at 8.

Midland objects to the Magistrate Judge's factual finding in
the August 14, 2017 Order that a triable issue exists regarding
whether Newton agreed to arbitrate. See Docket No. 117 at 9-10.
Midland argues that it submitted sufficient evidence to establish
that the Chase Agreement governs the Newton Account. However, based
on a review of the record, the Magistrate Judge's factual finding
was not clearly erroneous. A reasonable factfinder could conclude,
based on the evidence presented by Midland, discussed below, that
Newton did not agree to the proffered Chase Agreement and/or that
a different agreement governs her account.

Midland produced the credit card agreement that it claims
governs the Newton Account. The Chase Agreement states on the first

page that "[a]ny use of your account is covered by this agreement." Chase Agreement at 1. The Chase Agreement also contains an arbitration provision. See id. at 3. However, there is no evidence that this particular Chase Agreement governs the Newton Account. Unlike the FIA Agreement concerning the Khath Account, the Chase Agreement does not have Virginia Newton's name on it. The declarations provided by Midland concerning the Newton Account do not state that the Chase Agreement was sent to Newton or that Newton ever saw it. See generally Burger-Newton Decl.; Suppl. Burger-Newton Decl. Nor is there other evidence allowing the inference that Newton received this Chase Agreement. Burger only stated that the Chase Agreement is "an exemplar of the Card Agreement for the Newton Account." Burger-Newton Decl. ¶12. In contrast, Stephenson stated in her affidavit concerning the Khath Account that the proffered FIA Agreement "is a true and correct copy of the account agreement that was provided to Khath" and that he incurred charges on his account "following the mailing of the card and Card Agreement." Stephenson Aff. ¶8.

Midland asserts that the court must conclude the proffered Chase Agreement governs the Newton Account because the billing records reference a "Cardmember Agreement, as amended," and invite Newton to visit Chase's website where her credit card agreement was purportedly available. See Burger-Newton Decl., Ex. 1 (billing records). However, this evidence does not connect the proffered

Chase Agreement to the Newton Account because the "as amended" language indicates that the terms governing her account changed over time. Moreover, assuming that the "Cardmember Agreement" governing the Newton Account was indeed amended over time, see id., there is insufficient evidence that the "exemplar" agreement produced by Midland contained the pertinent provisions at the relevant time, see Burger-Newton Decl. ¶12. Newton opened her account in 2001, see Burger-Newton Decl. ¶11, but the proffered Chase Agreement was copyrighted by JPMorgan Chase & Co. in 2007, see Chase Agreement at 5.

Midland also argues that the Magistrate Judge's August 14, 2017 Order is contradictory because it finds that: (a) Midland was assigned contract rights to both the Khath and Newton Accounts; and (b) Midland has the right to enforce the FIA and Chase Agreements; yet, she fails to compel Newton to arbitrate pursuant to the Chase Agreement. See Docket No. 117 at 2, 8; see also Aug. 14, 2017 Order at 6. Midland's contention is incorrect, and possibly based on a misunderstanding of the Magistrate Judge's rationale for finding it had failed to prove Newton agreed to arbitrate. It was not inconsistent for the Magistrate Judge to find that the Newton Account was assigned to Midland, while also finding a genuine dispute concerning the terms of the agreement concerning that account. For the reasons explained earlier, the Magistrate Judge permissibly found that Midland failed to

34

"demonstrate a proper nexus" between the Newton Account and the Chase Agreement. Aug. 14, 2017 Order at 7. In other words, Midland did not prove that the terms of the proffered agreement, as opposed to some other version of a Chase credit card agreement, could be enforced against Newton.

In support of its objection to the Magistrate's factual finding, Midland cites several cases, none binding on this court, in which an unchallenged "exemplar" agreement was used to demonstrate an agreement to arbitrate between the parties. See Docket No. 117 at 9-10. However, based on the present record and the lack of nexus between the Chase Agreement and Newton Account, the court has not "formed a strong, unyielding belief that a mistake has been made." Phinney, 199 F.3d at 4. In the cases cited by Midland, there was evidence that an agreement was sent to the cardholder, which is lacking with respect to Newton. See, e.g., Danley v. Encore Capital Grp., 2016 WL 2851343, at *2 (E.D. Mich. 2016) (finding cardholder agreed to arbitrate where bank submitted a credit card statement sent to cardholder that contained the complete card agreement governing the account, which contained an arbitration provision), aff'd, 680 Fed. App'x 394 (6th Cir. 2017). Therefore, the Magistrate Judge's finding that a triable issue remains regarding whether the Chase Agreement governs the Newton Account is not clearly erroneous.

Because a reasonable factfinder could conclude that Newton did not agree to arbitrate, a summary trial on the issue is proper. The Magistrate Judge noted in her January 20, 2017 Order that "the FAA may require a summary trial on the issue," and requested briefing on the issue. Jan. 20, 2017 Order at 13. The parties complied. In her August 14, 2017 Order, the Magistrate Judge found that a triable issue exists with respect to Newton, but did not discuss whether a summary trial would be held. See Aug. 14, 2017 Order at 9-10. Nevertheless, plaintiffs now argue that a summary trial should not be held because Midland has already had ample opportunity to prove that Newton agreed to arbitrate and has failed to do so. See Docket No. 118 at 8-9; see also Docket No. 83 at 1, 11-13.

However, the FAA states that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. §4. Therefore, "[i]f a party's motion under §§3 or 4 presents unresolved questions of material fact, the FAA 'call[s] for an expeditious and summary hearing' to resolve those questions." Dillon, 787 F.3d at 713 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983), superseded by statute on other grounds). As the First Circuit has held with regard to the FAA, "an evidentiary hearing . . . is required only if there is a genuine issue of material fact for

36

which a hearing would be necessary." Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc., 455 F.3d 7, 15 (1st Cir. 2006). Such an issue exists here with respect to Newton, as the Magistrate Judge found. Therefore, the court may conduct a summary trial on the disputed issue of whether Newton agreed to arbitrate.

Moreover, as the Magistrate Judge correctly held in her August 14, 2017 Order, a motion to compel arbitration is not dispositive. See PowerShare, 597 F.3d at 14-15; Aug. 14, 2017 Order at 2 n.2. Neither party objected to this aspect of the Magistrate Judge's ruling. Therefore, the Magistrate Judge may conduct the summary trial.

IV.  ORDER

Having considered the parties' objections, it is hereby ORDERED that:

1.  The Magistrate Judge's January 20, 2017 Order (Docket No. 82) is AFFIRMED.

2.  The Magistrate Judge's August 14, 2017 Order (Docket No. 116) is MODIFIED in part. The Magistrate Judge shall decide the validity of the Class Action Waiver in the FIA Agreement as it pertains to Khath before determining whether Khath is compelled to

arbitrate by the Arbitration and Litigation Section. The Magistrate Judge's August 14, 2017 Order is otherwise AFFIRMED.


UNITED STATES DISTRICT JUDGE